May it please the Court, my name is Stephanie Adraktis and I represent the appellant Juan Rodriguez. The district court abused its discretion when it denied Mr. Rodriguez's request for an evidentiary hearing as to his claim that he was misadvised as to how his state sentence would run concurrently with his federal sentence based on the same facts. Rodriguez alleges that his attorney advised him that his federal sentence would run concurrently with the state sentence he was serving for an offense based on the same underlying criminal conduct. The plea agreement in this case specified that the government would not object to concurrent time for any undischarged portion of the state sentence. However, the plea agreement did not state when the undischarged portion of the state sentence would begin to run. Isn't the problem in this case that there was no agreement as to how you would treat time served, what kind of credit you would get for time served? Well, Your Honor, because the Bureau of Prisons allocates credit for time served, the way the issue has ultimately been handled in United States v. Frito in this Court's decision was in terms of an adjustment which has the functional effect of a credit, but it's not something that the district court can do with sentencing in order to achieve the desired degree of concurrency between the federal and state sentences. Is your claim that he was unable to get that adjustment and he wasn't told before he entered the plea that it was not in the cards, or is it that his lawyer was ineffective in failing to accomplish the reduction? Your Honor, his claim is that his lawyer misadvised him as to how the sentences would run concurrent, and that's apparent from defense counsel's statements at the sentencing hearing where he said, Your Honor, these sentences are going to start. Do you make a straight claim that the lawyer was ineffective in failing to argue that Drake should be extended to this statute and that he should have gone down, the judge could have gone down below the mandatory minimum? Well, Your Honor, essentially the lawyer did make a claim similar to that. He did ask the district court to run the sentences from the same date, in other words, to essentially backdate them. But Mr. Rodriguez's claim is different. He's saying that my lawyer told me that that's how the sentence was going to run, and that was my understanding of how the plea agreement worked. So his claim is that his plea was involuntary because his lawyer told him, Your sentences, state and federal, are both going to start on July 5th. So the answer to the question is no, you're not making a straight IAC claim? I'm not making, he didn't make a straightforward IAC claim. It's essentially that his plea was involuntary because his lawyer was ineffective in the advice that he gave him. It's a hybrid, essentially, claim of involuntary plea. The plea agreement's reference to an undischarged portion of Rodriguez's state sentence is vague and confusing because it doesn't specify when that undischarged portion would begin to run, and because its use of the term undischarged in this context is also confusing. The applicable guideline refers to an undischarged state sentence as one that has not been fully served. That may be true, but what's your response to the government's argument that the district judge said, Look, I know you want it to be concurrent, but I'm giving you no guarantees on that. I mean, you basically said you have no assurances on that. Why isn't that enough to say he knew what he was getting into? Well, Your Honor, it's true that the district court said to Mr. Rodriguez at the time of the plea hearing, It's up in the air as to how these sentences are going to run, concurrent or not. However, especially at that time, it would be difficult even for an attorney to understand how these sentences would or wouldn't run concurrent and to make predictions about that. Mr. Rodriguez understandably was relying on the more detailed conversations that he had with his lawyer prior to the plea. And that's something the district court discussed with him at the plea hearing. Did you talk with your lawyer about this? Did you discuss it in detail? So Mr. Rodriguez understandably relied on his lawyer's assurances and not this rather fleeting reference to something being up in the air. This is a tough subject for even a lawyer to understand how it works, and it hasn't been fully resolved in this circuit until 2017 when the Brito decision came out that said that the district court can construe the state sentence and the federal sentence as a total sentence for purposes of satisfying a mandatory minimum. This court should construe any uncertainty in the plea agreement in Mr. Rodriguez's favor because the government drafted the plea agreement and because Mr. Rodriguez should benefit from the rule of lenity that applies in criminal cases. His allegations that he was misadvised as to the issue of concurrency would also establish that his plea was not knowing or voluntary. Is he contending that the government and the court also misrepresented to him? He does make that contention, although I think the core of his argument is that his lawyer misadvised him. Essentially he seems to have misunderstood what the term undischarged meant in the plea agreement versus what it means in the guideline and the statute. And one can infer this from the way that he wrote his reply brief in the district court as to his 2255 motion because throughout he uses the word undischarged to refer to a state sentence that's not fully served. I'm sorry, but you referenced the guideline and it references undischarged, but it doesn't use the phrase undischarged portion. Does that change the result? I think that supports what I'm saying here, that it would be confusing to a lawyer and to a layperson that the term undischarged in this draft, the draft of this plea agreement, it refers to a portion of a sentence that has not yet been served. But the phrase undischarged that applies to concurrency between state and federal sentences refers simply to a state sentence that has not yet been fully completed. And there is a very big difference between how a fully completed sentence is handled for concurrency purposes and one that has even one day left on the state clock. So Mr. Rodriguez was understandably confused about what that word undischarged meant. It's obvious from what he wrote in his pleadings that he thought that given that he was not done finishing his state sentence at the time of his federal sentencing, that he would receive the benefit of the guideline which states that an undischarged state sentence can run concurrent with a federal sentence. All right, but counsel, the court, Judge Fitzgerald said, he explicitly said to counsel, it is my intention to recommend that this sentence be concurrent with the remainder of the state sentence. Doesn't that explain that in English? It does state that in English. To the extent that counsel prior to the plea hearing had assured Mr. Rodriguez to the contrary, that's something that he should be allowed to prove at an evidentiary hearing and to make his argument that I just didn't understand. Were you his trial counsel? When Mr. Rodriguez was represented by trial counsel at that time. Were not his trial. No, I was not. So he should be allowed to present evidence as to what his lawyer told him and whether or not he relied on that. And defense counsel's statements at the sentencing do support what Mr. Rodriguez is saying. Defense counsel said at the end of Mr. Rodriguez's sentencing, well, your honor, this federal sentence is going to run from the date that his state sentence started, correct? And that's contrary to what the judge said at the plea agreement, and this is the lawyer's own statement. Let me flesh out, though. What is your argument as to prejudice? Your honor, the government argued in its response that Mr. Rodriguez hasn't shown that he wouldn't have entered the plea, but for this misrepresentation, however, he submitted a declaration with his, you know, traverse or his reply brief stating, I wouldn't have accepted this deal if it wasn't for the assurance that I would get credit for this 15 months that I had served. Right, but if he didn't accept the deal, it's not likely that, I mean, it's likely that he would have ended up serving a substantial portion of the state sentence anyway. I mean, I don't know if that was a real realistic option for him. Well, the other response as to prejudice is that these continuances, some of which were solely for defense counsel's benefit, Mr. Rodriguez would not have stipulated to continue his sentencing hearing for 212 days, a total of five stipulations, if he had known that his concurrent time couldn't begin to run until the date of his federal sentencing. He should have, at minimum, received the benefit of that 212 days, because under these circumstances, any rational defendant would say, I want to be sentenced as soon as possible, particularly when the sentence that was going to be imposed was a mandatory term. I'd like to reserve any time. Okay, you're out of your time, but let's see if you have something you need to say after. Good morning. May it please the court, Jennifer Cho on behalf of the United States. And I'll note that I was the prosecutor at the proceedings below. Even if the alleged misadvice by trial counsel, Mr. Mendezian, were true, it doesn't actually change this court's analysis, because it is a straight IAC claim, and what he's claiming is that he relied on this alleged misadvice that was given prior to his entry of the guilty plea, and that this misadvice caused him to decide to plead guilty. But the record conclusively shows that before he entered his guilty plea, at this very extensive plea colloquy, the district court, Judge Fitzgerald, did everything that the law of the circuit requires a court to do to advise the defendant prior to entering a guilty plea, that he can have no expectations as to what the sentencing is going to be. And so what did Judge Fitzgerald say? He said, I want you to understand, do you understand, I, the court, am not bound by the plea agreement. And the defendant said, under oath, solemn declaration, yes, I understand. Judge Fitzgerald said, do you understand, I can reject the government's recommendations at sentencing, even if they're helpful to you. And the defendant said, under oath, yes, I understand. Judge Fitzgerald said, do you understand, quote, the sentence will be determined by me and me alone. Do you understand? And the defendant said, yes, I understand. So the defendant said, under oath, he understood that Judge Fitzgerald, the district court, retained sentencing discretion. Do you understand, the judge said, that the only thing you can be certain of is that you'll be sentenced within the statutory maximum, which in this case is life imprisonment. Do you understand? And the defendant said, yes, I understand. This is all before he entered his guilty plea. And under the law of the circuit, Sexton, Daugonier, Thornton, and Womack, and Shaw, that's enough. That's enough to show that the defendant entered a guilty plea knowing that he could not have an expectation, despite what his defense counsel may or may not have advised him prior to entering his guilty plea, that the defendant did not have an expectation at the time he pled guilty that the sentence would be a particular way, that he understood the consequence. And one of those consequences is that the district court retained sentencing discretion. Now, in this case, Judge Fitzgerald actually took an extra step, and he specifically addressed this issue of whether or not the federal sentence would run concurrent or consecutive, or how it was going to run with the state sentence. And at that point, as the court has pointed out, Judge Fitzgerald specifically said, do you understand that it's up in the air how any federal sentence might run with that state sentence? I know under the plea agreement that it's your hope that they'll run together, but you can't be certain that that's going to happen. So the district court took this extra step to specifically advise the defendant that whatever hopes he may have had for the concurrency, whatever expectations he may have had based on conversations with his defense counsel, even based on the plea agreement, which the court was not a party to, and he made sure that he understood that, or the district court made sure the defendant understood that the court was not bound by the plea agreement. Why was the sentencing so dragged out in this case? I mean, it occurred a long time after the plea hearing. Right, Your Honor. So according to the stipulations to continue, which were all filed by Mr. McDesion, the first three stipulations were requested in order to allow Mr. McDesion to investigate and then address and try to resolve issues with the defendant's state criminal history, which Mr. McDesion represented could be critical to a determination of whether or not the defendant would be safety valve eligible. So those were the first three stipulations. And then the next stipulation continued, Mr. McDesion represented that he was in trial in Omaha, Nebraska at the time of the sentencing date. And then the last one, Mr. McDesion represented that he had a family emergency. I mean, because certainly, I mean, they make the argument that if he really did correctly understand what, how the system he was about to enter worked, he wouldn't have gone along with these continuances, which were going to have the effect of substantially lengthening the amount of time he was going to serve in custody. Yes, Your Honor, but that's not what he alleged in his petition, and that's not the claim that was before the district court, and it's not the claim that's before this court. His claim was very contained in his 2255 petition. He said, I am alleging that Mr. McDesion gave me this misadvice, and that I relied on the advice, I believed based on the advice that the two sentences would run fully concurrently. I'll note that he didn't allege in his petition that there was any prejudice. The allegation for prejudice didn't come until after he filed or in his reply or his traverse. And he did not allege that the court erred by not giving him credit, that the defense counsel was ineffective for seeking and obtaining these stipulations and continuing the sentencing. He's not alleging any of that. His only allegation. You raised a number of those issues yourself in your response to the 2255 motion about what the scope of the discretion was and whether Drake applied. Correct, Your Honor, in the sense that what the expectation of the defendant was at the time that he pleaded guilty. His claim is all about whether or not at the time that he pleaded guilty, he had an expectation based on his reliance on defense counsel that a sentence would run a particular way. And the record conclusively shows, which is why the court did not abuse its discretion in summarily denying the petition, the record conclusively shows that he was advised in so many ways before he was allowed to plead guilty that he could not have any expectation as to how the sentence would run. The delay, whether he raised it or not, you know, I don't know. It comes in in the context of prejudice. But the delay really troubles me, too, because it was clear that what the government, the state, was saying was we're not going to oppose a concurrent sentence, a sentence that's concurrent with the undischarge or the remaining state sentence, right? Right. So the more they delayed it, that it diminished the amount of time that could run concurrent. Your Honor, it's not for the government to determine whether or not it was an appropriate request for defense counsel to try to seek more time at the expense of reducing concurrency. No, it's not the government. I'm not even suggesting it's the government. I'm suggesting this might relate to prejudice. But the prejudice, Your Honor, has to go to the case. I mean, given the government's representation, right, the government didn't say it could run concurrent in the abstract. It said we wouldn't oppose concurrent with the remaining time. That's right, Your Honor. And I have to take it back again to what the prejudice is for. In the context of claiming ineffective assistance of counsel in the plea proceeding stage of the proceedings below, the question for prejudice is would I have entered into the guilty plea because I relied on counsel's advice, because at the time that I told me. And the record just belies that claim because the defendant was told repeatedly, advised repeatedly that he couldn't have expectations. He swore under oath that he understood. He never once said during this extensive colloquy, well, wait a second, my lawyer told me that the two sentences run fully concurrent. Now you're telling me I can have no expectations? I don't want to plead guilty. He had the opportunity to say that, and he never did. Was he in federal custody the whole time after his guilty plea until he was sentenced? Yes, he was. But he gets no credit because he was there only on a writ? Is that why he gets no credit? Correct. But yet 63 days of the period in your motion, you said, how are those 63 days drawn and other days are not? I couldn't understand that. So the 63 days would take hours and days, maybe months to explain because this is what the OP counsel had explained to me. There's something called Willis credits. Some of the credits are credits that come from nights or days that he spent in custody that didn't get applied to other state sentences. So, I mean, I'm not saying this is what happened, but say he had been picked up on an outstanding traffic warrant and he spent the night in jail. And then they let him go and there was no sentence that arose from it. That credit, if it occurred, if that incident occurred within the time period of the  credits are, in fact, credits for days that he technically did get applied to another outstanding sentence. But the BOP, for whatever reason, in its discretion, decided to give him credit for that after all. Was it error in your declaration when you said, as set forth in Exhibit A, the BOP applies credit for all days the petitioner spent in custody, whether state or federal, between the earliest date of the offense, February 1st, 2011, and the date that the petitioner commenced serving his federal sentence, August 6th? That, to me, suggested that if that's accurate, there's no issue here. Well, the last part of that sentence is if those dates are not applied toward another sentence. So if he spends time in either state or federal custody, as I was just explaining to Judge Collins, for something that doesn't actually result in a sentence toward which that day or night can be credited, then if it occurs during the period of the conspiracy, BOP will give him credit for that time that he spent in custody. However, because of, and I see that my time is up, but if I could just finish the question, the time that he was spending in custody, first in state custody before he was written over, and I'll note again, of course, that he was initially sentenced to probation for this conduct, for having the pound of meth down his pants. He was given a suspended sentence, and then he was picked up by the federal case. He was released on bond, and then he violated his probation and then entered into state custody, and then from that time on, July of 2014, he was accruing state credit toward his state 56-month sentence. He was written over into federal custody, and then while he was in federal custody, he was still accruing state credit, but he wasn't accruing federal credit. And to answer your question, Judge Wardlaw, the question of whether or not there was something untoward about the continuances, you know, whether or not Mr. McDesion really needed that time to investigate a potential safety valve relief, that's not before the court. And the only question that this court needs to ask itself is, was the defendant truly not advised at the time that he went into the guilty plea that he could have no expectations? And the record conclusively shows that he was so advised, Judge Michelle. All right, counsel, you're over your time. Thank you. Thank you, Your Honor. I will give Ms. Adractas a minute, since government counsel went over. Thank you, Your Honor. The certified claim is whether Mr. Rodriguez's plea was knowing, voluntary, and intelligent. The standard in that situation is simply that he needs to establish that his plea was not knowing or voluntary. He doesn't need to establish prejudice beyond that. It's an invalid plea if it was not knowing. As to the stipulations, there's evidence that both defense counsel and Mr. Rodriguez didn't understand how the concurrency rule would apply, because defense counsel wouldn't have done this if he had understood that he could not persuade the district court or the Bureau of Prisons to what he viewed as back date, the sentence to July 3rd. If he thought, as is apparent from the record, that the sentences would start on the same date, then it does make sense for him to ask for all this additional time. But as a practical matter, Mr. Rodriguez had several driving offenses. He had minor criminal history points, but they were 7 to 9 points, the idea that he was going to be able to get this down to less than 1. I mean, why ask for months and months to do that? It just didn't benefit Mr. Rodriguez at all. All right. Thank you very much, counsel. Rodriguez v. The United States is submitted.
judges: Wardlaw, Settle, Collins